JOHN W. HUBER, United States Attorney (#7226)
PAUL KOHLER, United States Attorney (#8224)
Attorneys for the United States of America
20 North Main Street, Suite 208
St. George, Utah 84770
Telephone: #(435) 634-4263

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

SEP 25 2017

D. MARK JONES, CLERK
BY_____
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | FELONY COMPLAINT |
| Plaintiff, | #2:17-mj-482 |
| v. | 18 U.S.C. § 922(g)(5)(A), ILLEGAL ALIEN POSSESSING FIREARM AND AMMUNITION |
| WILBERT ALEXIS MEJIA-DIAZ, | |
| Defendant. | |

Before United States Magistrate Judge Robert T. Braithwaite in the U.S. District Court for the District of Utah, appeared the undersigned, who, on oath deposes and says:

## COUNT I

(Illegal Alien Possessing Firearm and Ammunition)

On or about September 11, 2017, in the Central Division of the District of Utah,

**WILBERT ALEXIS MEJIA-DIAZ,**

defendant herein, being an alien illegally and unlawfully in the United States, did knowingly possess in and affecting interstate commerce a firearm—that is, a Springfield

Model 1911 .45 caliber handgun—all in violation of 18 U.S.C. § 922(g)(5)(A) and punishable under 18 U.S.C. § 924(a)(2).

## AFFIDAVIT IN SUPPORT OF FELONY COMPLAINT

I, Shaun Helt, the undersigned affiant state the following is true and correct to the best of my knowledge and belief:

1. I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section, 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), and have been so employed since March 2003. I am currently assigned to the St. George Resident Office, St. George, Utah. I am a graduate of the Federal Law Enforcement Training Center completing the Criminal Investigator Training Program and the United States Customs Basic Enforcement School. Prior to joining HSI, I was an agent with the United States Border Patrol for eight years. My current duties include investigating violations in immigration law, narcotic and controlled substances, financial, fraud, intellectual property rights, child exploitation and the illegal movement of individuals, products and contraband traveling through the borders of the United States.

3. As a Special Agent with HSI, I have conducted multiple investigations regarding the illegal possession of firearms.

4. The information contained within this affidavit is based on my training and experience, my personal knowledge and observations, as well as information related to me by other law enforcement officers.

5. On September 12, 2017, a firearm was discharged at the residence of Wilbert Alexis Mejia-Diaz and injured a woman. Santa Clara/Ivins Police Department conducted a recorded interview with MEJIA. MEJIA was provided his Miranda Rights and agreed to answer questions without an attorney present. MEJIA made the following statements.

6. He purchased the firearm that was used in the shooting from a Craigslist add approximately one to two months prior to the incident. The seller of the firearm was an unknown Hispanic male and MEJIA paid $500 cash for the pistol. After purchasing the firearm it was stored on the shelf above his son's bedroom closet and nobody knew about the firearm except his wife. Nobody moved the firearm since it had been purchased and placed on the closet shelf.

7. On September 11, 2017, MEJIA had taken the firearm down from his son's bedroom closet shelf and was "messing with it." He was checking out the firearm for scratches and cleaning it. His wife had been asleep on his son's bed and when she woke up from hearing him handling the firearm, she sat down beside him and then the firearm accidently went off and hit her in the head.

8. MEJIA was shown a picture taken approximately fifteen days prior to the shooting incident of his brother holding what appeared to be the same firearm. MEJIA said his brother, Brayan MEJIA, had it before him and that Brayan had got it from a

3

friend.

9. MEJIA was asked about a Social Security card he provided to his employer, and stated it was a fake card he had purchased in Las Vegas, Nevada at a parking lot for $100.

10. HSI Special Agents then questioned MEJIA about his immigration status. MEJIA stated he was a citizen of Mexico and does not possess immigration documents to legally enter, be in, or stay in the United States, but said he was in the process of applying for papers through his wife.

11. Immigration records checks verified that an I-130 form had been submitted on MEJIA's behalf but the form only documents that he and his wife are married. The I-130 does not reflect nor confer any legal immigration status on MEJIA.

12. MEJIA was not legally admitted into the United States and does not possess any legal documentation granting him status to legally remain or be present in the United States. The lack of immigration records indicates MEJIA is an illegal alien.

13. Immediately following completion of the Wilbert MEJIA interview, Brayan MEJIA was questioned by Santa Clara/Ivins Police Department concerning the firearm. Brayan MEJIA stated that he thought the firearm was cool and he just took a picture with it at Wilbert MEJIA's house. He did not give or sell the firearm to his brother nor was he involved in the purchase or possession of it.

DATED this 25th day of September, 2017.

SHAUN HELT
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN TO before me this 25th day of September, 2017.

ROBERT T. BRAITHWAITE
United States Magistrate Judge

JOHN W. HUBER
United States Attorney

PAUL KOHLER
Assistant United States Attorney